UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:18-CV-80171-ROSENBERG/REINHART

RMP ENTERPRISES, LLC, d/b/a
*Ambrosia Treatment Centers*, et al.,

    Plaintiffs,
v.

CONNECTICUT GENERAL LIFE
INSURANCE COMPANY, d/b/a *CIGNA*, et al.,

    Defendants.
_____/

## ORDER GRANTING DEFENDANTS' MOTION
## TO DISMISS THE FIRST AMENDED COMPLAINT

    This Cause is before the Court on Defendants' Motion to Dismiss the First Amended Complaint ("FAC") with prejudice (the "Motion") (Dkt. No. 47). Plaintiffs responded (Dkt. No. 63), and Defendants filed a Reply (Dkt. No. 66).

    On June 13, 2018, the Court dismissed Plaintiffs' Complaint (the "Complaint") (Dkt No. 1) for failure to state a claim, but granted Plaintiffs leave to amend (the "Order") (Dkt. No. 40). In the Order, the Court provided Plaintiffs with a roadmap of what was required in order to properly state a claim. The FAC fails to cure these deficiencies. For the reasons set forth more fully below, Defendants' Motion is granted, and Plaintiffs' FAC is dismissed with prejudice.

### I.    BACKGROUND

    The factual background as set forth in the FAC remains largely the same as in the Complaint. Plaintiffs are substance abuse treatment and mental health facilities which provide medical and mental health services to members of employee benefit plans administered and/or insured by Cigna. (FAC ¶¶ 8-13, 21.) Plaintiffs are three LLCs—RMP Enterprises, LLC ("Ambrosia PSL" or "St. Lucie ATC"); Ambrosia of the Palm Beaches, LLC ("Ambrosia Singer

Island"); and Ambrosia South, LLC ("Ambrosia South")—doing business as Ambrosia Treatment Centers. Plaintiffs "accept direct payments from Cigna and the Companies for which Cigna directly acts as the group coverage insurer as reimbursement for the services it provides to Plan Members and their beneficiaries for medical and mental health services directly related to substance abuse." (*Id*. ¶ 12.) The Plans for which Cigna directly acts as the group coverage insurer and for which Cigna acts as the third-party administrator are governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq.

Plaintiffs are "out-of-network," "non-participating" providers who have no written provider agreement with Cigna. (*Id.* ¶ 21.) Rather, they have attempted to step into the shoes of unidentified Cigna members and recover the members' alleged health benefits. (*Id.* ¶ 31.) According to Plaintiffs, Cigna has underpaid on claims, failed to pay claims, delayed payment on claims, and sought to recoup overpayments on claims. (*Id.* ¶¶ 36-38.)

As in the Complaint, Plaintiffs also allege that Defendants seek to recover funds that they already paid to Plaintiffs. (*Id*. ¶ 93.) According to the FAC, Defendants sent a letter to Plaintiffs on September 19, 2014 informing Plaintiffs that Defendants' Special Investigations Unit was conducting an audit of claims filed for services rendered at St. Lucie ATC. (*Id*. ¶¶ 83, 96.) The FAC alleges that on February 24, 2016, Defendants' Special Investigations Unit again wrote to Plaintiffs, alleging that Defendants' initial audit of claims revealed "a number of issues related to unqualified health care professionals and documentation or supervisory signatures" at Ambrosia Treatment Center. (*Id*. ¶ 85.) As a result of this review, described in the February 24, 2016 letter, the FAC alleges that Defendants put a "flag" on the Ambrosia PSL facility to "deny all services" at that facility. (*Id*. ¶ 86.) In response to the February 24, 2016 letter and the Defendants' "flag," the FAC alleges that Plaintiffs "timely lodged ERISA appeals challenging the adverse benefits determinations." (*Id*. ¶ 88.) On September 13, 2016, Plaintiffs received a letter

from Defendants seeking a refund of $5,275,402.10 for "overpayments" that Defendants had made to Plaintiffs. (*Id.* ¶ 93.)

The FAC also alleges that in December 2017, Defendants requested documents from the Ambrosia Singer Island and Ambrosia South facilities in order to conduct an audit of these facilities. (*Id.* ¶¶ 111, 113.)

The FAC alleges: claims under § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), for Defendants' Failure to Provide Benefits Under ERISA Plans (Count I); claims under § 502(a)(3), 29 U.S.C. § 1132(a)(3), for Defendants' Failure to Maintain Reasonable Claims Procedures (Count II); Breach of Implied-in-Fact Contract (Count III); Breach of Implied-in-Law Contract (Count IV); and Declaratory Judgment (Count V).

## II. MOTION TO DISMISS STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). "When the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Id.* at 558 (citation omitted). Indeed, the Eleventh Circuit has observed that whenever possible, facial challenges to the legal sufficiency of a complaint, raised in a dispositive motion to dismiss, should be resolved before the costly discovery phase begins. *Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1292 (11th Cir. 2005).

## III. ANALYSIS

    a. <u>Plaintiffs Ambrosia Singer Island and Ambrosia South Lack Standing To Bring This Lawsuit</u>

Standing under Article III of the Constitution requires a plaintiff to allege "(1) an injury in fact, meaning an injury that is concrete and particularized, and actual or imminent, (2) a causal connection between the injury and the causal conduct, and (3) a likelihood that the injury will be redressed by a favorable decision." *America's Health Ins. Plans v. Hudgens*, 742 F.3d 1319, 1327 (11th Cir. 2014) (citations omitted). In the Complaint, Plaintiffs made general allegations regarding underpayment, delayed payment, non-payment, Cigna's "audit," and attempted recoupment. (Compl. ¶¶ 28-30, 78, Dkt. No. 1.) But despite suing on behalf of three separate entities, Plaintiffs referred to themselves collectively as "ATC" throughout the Complaint and failed to identify the particular injury allegedly inflicted on each of the three facilities. (*See, e.g.*, *id*.) The Court concluded that Plaintiffs had failed to sufficiently allege standing, because the Complaint failed to "clearly explain what harm was caused to each Plaintiff." (Order at 4.)

The FAC attempts to remedy this defect by specifying, in at least some places, that its allegations regarding non-payment, Cigna's "audit," and Cigna's attempted recoupment relate solely to Ambrosia PSL. (*See, e.g.*, FAC ¶¶ 161-67.) In addition, Plaintiffs amended their claim for benefits under ERISA § 502(a)(1)(B) (Count I) to assert that claim on behalf of Ambrosia PSL only. (FAC at p. 27.) However, the FAC remains devoid of any allegations that two of the entities — Ambrosia Singer Island and Ambrosia South — suffered any "injury-in-fact" as a result of Cigna's conduct. None of Plaintiffs' allegations regarding underpayment, delayed payment, non-payment, Cigna's "audit," or wrongful attempted recoupment are directed at Ambrosia Singer Island or Ambrosia South. (*See, e.g.*, FAC ¶¶ 83-87.) The only allegations specifically directed at Ambrosia Singer Island or Ambrosia South in the FAC are allegations that

Cigna requested medical records from them. (*Id.* ¶ 198.) Plaintiffs claim these requests were "retaliatory" and "for no legitimate review purpose." (*Id.* ¶ 199.) Even assuming Plaintiffs' allegations regarding the records requests are true for the purposes of this Motion, they do not establish an injury-in-fact for purposes of constitutional standing. Plaintiffs have not alleged any injury to Ambrosia Singer Island or Ambrosia South resulting from these alleged records requests, and have not even alleged that they complied with the records requests or suffered any consequences for failure to do so. For these reasons, Ambrosia Singer Island and Ambrosia South lack standing to assert any claims and are hereby dismissed as Plaintiffs from this case with prejudice.

b. Plaintiffs Have Not Exhausted Their Administrative Remedies

"The law is clear in this circuit that plaintiffs in ERISA actions must exhaust available administrative remedies before suing in federal court." *Counts v. Am. Gen. Life & Accident Ins. Co.*, 111 F.3d 105, 108 (11th Cir. 1997); *see also Perrino v. S. Bell Tel. & Tel. Co.*, 209 F.3d 1309, 1315 (11th Cir. 2000) ("We strictly enforce an exhaustion requirement on plaintiffs bringing ERISA claims."). In the Eleventh Circuit, the "exhaustion requirement applies equally to claims for benefits and claims for violation of ERISA itself." *Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1328 (11th Cir. 2006).

Chief Judge Moore dismissed a similar lawsuit brought by health care providers against Cigna for failure to exhaust administrative remedies. *See BioHealth Med. Lab., Inc. v. Conn. Gen. Life Ins. Co.*, No. 1:15-cv-23075-KMM, 2016 WL 375012, at *4 (S.D. Fla. Feb. 1, 2016) *aff'd in part and vacated in part BioHealth v. Conn. Gen. Life Ins. Co.*, No. 16-10978, 706 Fed.App'x 521 (11th Cir. Aug. 14, 2017). Chief Judge Moore reasoned that administrative exhaustion was an important step that would result in a detailed review of specific claims under the relevant plan provisions, create an administrative record, and narrow any issues remaining for

litigation, all without burdening the court. *Id*. at n.2.

In their Complaint, Plaintiffs alleged they submitted appeals for some unidentified claims. (Compl. ¶ 153.) Plaintiffs vaguely referred to "Level 1 appeals" and "Level 2 appeals," but failed to identify which claims were allegedly appealed, when they were allegedly appealed, and how they were allegedly appealed. (*Id.* ¶¶ 144, 149.) In dismissing Plaintiffs' ERISA claims, this Court found that Plaintiffs' failure to identify the claims at issue was fatal to their ability to plead exhaustion. (Order at 6.) The Court explained:

> As a threshold issue, the Court cannot discern from the Complaint exactly what claims Defendants denied or what steps Plaintiffs took to appeal those claims. The Complaint contains emails between Plaintiffs and Defendants' Special Investigations Unit regarding Defendants' recoupment demand. The Court, however, cannot discern what specific claims Plaintiffs are alleging Defendants underpaid or failed to pay, as the Complaint is devoid of specificity as to when and what claims Defendants did not pay or underpaid. Accordingly, the Court cannot ascertain whether Plaintiffs exhausted administrative remedies as to any adverse benefit determination.

(*Id.*)

The FAC includes no additional allegations that clarify the claims at issue or how those specific claims were allegedly appealed. Plaintiffs' continued reliance on generalized references to "appeals," without identifying specific claims, is inadequate. *See, e.g.*, *Response Oncology, Inc. v. MetraHealth Ins. Co.*, 978 F. Supp. 1052, 1064 (S.D. Fla. 1997) ("In light of the fact that Plaintiff brings this suit as an assignee of 67 patients, under 46 plans, Plaintiff's allegation fails to meet even the admittedly low requirements of notice pleading. It is unclear to the Court which plans, if any, the Plaintiff has attempted to exhaust its administrative remedies."); *Sanctuary Surgical Ctr., Inc. v. UnitedHealthcare, Inc.*, No. 10-81589-CV, 2011 WL 2134534, at *7 (S.D. Fla. May 27, 2011) (finding plaintiffs had failed to sufficiently allege exhaustion where plaintiffs failed to allege "whether internal appeals were filed for all, or just some, of the denied claims").

Rather than addressing the concerns expressed in the Court's Order, Plaintiffs simply add

two allegations to their administrative exhaustion section, neither of which cure the defects identified by the Court:

First, Plaintiffs add the allegation that they "have requested to meet with Cigna's legal team directly to discuss the factual aspects of each appeal" but that Cigna "has made it clear" that "there would be no resolution . . . unless Plaintiffs issued a check for a substantial refund . . . ." (FAC ¶ 150.) This allegation confuses and conflates the legal requirement to exhaust administrative remedies prior to bringing an ERISA § 502(a)(1)(B) claim (Count I) with Cigna's demand to recover amounts overpaid to Plaintiffs. Plaintiffs must exhaust the administrative process prescribed under the benefit plan governing each of the claims for which Plaintiffs seek underpayment or denial of payment. *See Guididas v. Comm. Nat. Bank Corp.*, No. 8:10-cv-1410-T-30TBM, 2010 WL 3788740, at *2 (M.D. Fla. Sept. 24, 2010) ("[B]efore a plaintiff may bring an ERISA action in federal court, she must exhaust the administrative remedies provided for in the ERISA plan for challenging the administrator's denial of benefits.") Cigna's audit and demands to seek recoupment of amounts overpaid to Plaintiffs have nothing to do with the administrative exhaustion process. Plaintiffs' alleged correspondence with Cigna's Special Investigations Unit ("SIU") and legal department regarding Cigna's recoupment demand is distinct from Plaintiffs' obligation to exhaust administrative remedies under the benefit plans at issue for amounts Plaintiffs claim Cigna has underpaid or failed to pay. Accordingly, Plaintiffs have still not adequately alleged administrative exhaustion to assert Count I.

Second, Plaintiffs add the conclusory allegation that Cigna "has failed to comply with applicable regulations under 29 C.F.R. §§ 2560.503-1" by "fail[ing] to provide reasonable claims procedures" and "therefore ATC should be deemed to have exhausted the administrative remedies available under the Plans . . . ." (FAC ¶ 151.) But Plaintiffs have failed to set forth any facts demonstrating *how* Cigna has "failed to provide reasonable claims procedures." Plaintiffs'

only factual allegation is that Cigna's request for medical records from Ambrosia South and Ambrosia Singer Island was supposedly "retaliatory." (*Id.* ¶¶ 195-99.) But it is unclear how this allegation relates in any way to the reasonableness of Cigna's claims procedures or Plaintiffs' ability to exhaust their administrative remedies. Whether or not Cigna's medical records request was "retaliatory" has no bearing on Plaintiffs' obligation to exhaust their administrative remedies before filing ERISA claims.

In dismissing the Complaint, the Court directed that in order to satisfy the administrative exhaustion requirement, at a minimum, Plaintiffs must identify the specific claims that Cigna underpaid or failed to pay so that the Court can ascertain whether Plaintiffs exhausted administrative remedies as to those claims. (Order at 6.) The FAC fails to comply with this instruction, and Plaintiffs' new allegations with respect to exhaustion are insufficient. For these reasons, Plaintiffs' ERISA claims (Counts I and II) are hereby dismissed with prejudice.

c. Plaintiffs Fail To State A Claim For Relief Under ERISA § 502(a)(1)(B) (Count I)

Even if Plaintiffs had adequately pled administrative exhaustion, Plaintiffs' ERISA claims remain deficient for additional reasons. In Count I, Plaintiffs seek benefits under ERISA § 502(a)(1)(B), but fail to identify the claims at issue, the amount they seek,[1] the health care services at issue, or the specific benefit plans and plan terms that purportedly give rise to a cause of action. The Court dismissed Plaintiffs' Complaint for failing to provide this information. (Order at 7-8.) Plaintiffs still fail to supply any of these facts in the FAC.

*1. Plaintiffs Do Not Identify the Specific Claims at Issue*

The specific patient claims at issue in Count I of the FAC are even less clear than in

---

[1] In their Complaint, Plaintiffs alleged more than $6 million in damages. (Compl. ¶ 199.) Plaintiffs removed that allegation from the FAC, leaving even the total amount of benefits allegedly at issue unknown.

Plaintiffs' Complaint. Plaintiffs complain that Cigna has "underpaid," "failed to pay," delayed payment, and "unlawfully demanded refunds." (FAC ¶¶ 36-38.) Plaintiffs identify nineteen "sample" patients for which Plaintiffs allegedly rendered services between February 2012 and December 2013. (FAC ¶¶ 64, 83(b).) The FAC appears to acknowledge that Cigna paid some portion of these claims, but it is not clear whether Plaintiffs are contesting Cigna's payment amount. (*See id.* ¶ 40.) Subsequently, Plaintiffs allege that in February 2016 Cigna placed a "flag" on Ambrosia PSL, which allegedly resulted in a "slowing of payments" or "complete reimbursement denial" on unidentified claims from Ambrosia PSL. (*Id.* ¶¶ 86, 116.) Finally, Plaintiffs allege that Cigna has sought to recoup overpayments made to Ambrosia PSL. (*Id.* ¶ 93.) Based on this alleged conduct, Plaintiffs attempt to assert a claim for benefits under ERISA § 502(a)(1)(B), seeking "payments for all benefits due and owing under ERISA." (FAC ¶ 192.) Critically, however, Plaintiffs fail to allege which specific patient claims were impacted by which alleged conduct.

In dismissing the Complaint, this Court advised Plaintiffs that Count I was deficient, in part, because it "does not make clear what claims Defendants denied" and "does not state which claims Plaintiffs allege were affected by what conduct of which Defendant." (Order at 7-8.) The FAC fails to cure these defects. Plaintiffs make no effort to specify which claims were allegedly underpaid, not paid, paid late, or the subject of Cigna's alleged recoupment demand.[2] The only allegation Plaintiffs added to the FAC regarding the scope of their claim is that Plaintiffs' claim is

---

[2] Additionally, Plaintiffs' inclusion of allegations regarding Cigna's recoupment demand in their claim for benefits is not relevant. The only relief Plaintiffs seek in Count I (other than statutory penalties which is improper for reasons discussed *infra* at Section V.G) is "payments for all benefits due and owing," interest, and attorneys' fees. (FAC ¶ 192.) Plaintiffs do not allege that Cigna has actually recouped any money from Plaintiffs. It is therefore unclear what "payments" or "benefits" Plaintiffs seek in connection with the claims subject to Cigna's recoupment demand.

"for relief in connection with ALL claims submitted by Ambrosia PSL to Cigna for treatment rendered to patients covered by a health benefits plan governed by ERISA." (FAC ¶ 153.) This allegation, however, in no way clarifies "which claims Plaintiffs allege were affected by what conduct." (Order at 7-8.)

Plaintiffs continued failure to identify the particular patients, claims, services, or dates of service at issue, notwithstanding the benefit of the Court's instruction on this point. (*See* Dkt. Nos. 42, 44, 46.) Plaintiffs' failure to include these basic and necessary facts mandates dismissal of Count I with prejudice. *See, e.g., United Surgical Assistants, LLC v. Aetna Life Ins. Co.*, 2014 WL 5420801, at *2 (M.D. Fla. Oct. 22, 2014) ("The Second Amended Complaint fails to comply with the requirements of Rules 8 and 10 because . . . [it] does not provide information as to the identity of the patients for whom the procedures were performed, the specific ERISA plans that covered each patient, the terms of the plan that Aetna allegedly violated, or the dates on which the procedures were performed."); *Doctor's Hospital of Slidell, LLC v. United HealthCare Ins. Co.*, 2011 WL 13213620, at *2–3 (E.D. La. Apr. 26, 2011) ("Plaintiffs should provide in some form . . . enough basic factual information regarding each of the specific claims that Plaintiffs contend are actually at issue, including the identity of the patient and the nature and date of the services, the patient's ERISA plan, the amount billed and paid on those claims . . . the steps taken to exhaust administrative appeals for those claims, the requests made for plan documents, and the nature of pre-service verifications"); *see also United Surgical,* 2014 WL 5420801, at *3 (dismissing plaintiff's claim for benefits for failing to identify the claims at issue and holding that "[a]t a minimum, [plaintiff] should provide information identifying the patient, procedure performed, date of the procedure, and transaction amount . . .").

### 2. *Plaintiffs Do Not Allege Sufficient Facts Demonstrating Benefits Due*

Not only does the FAC fail to sufficiently identify the claims at issue, it also fails to allege

fundamental details about the basis for Plaintiffs' claim for benefits, which the Court's Order directed Plaintiffs to include. (*See* Order at 8.)

To state a claim for benefits under ERISA, a plaintiff must plead facts showing that there are "benefits due" to them "under the terms of" an ERISA plan. *See* 29 U.S.C. § 1132(a)(1)(B). This means Plaintiffs are required to identify the specific plan terms that confer the benefits sought. *See, e.g., Sanctuary Surgical Ctr. v. UnitedHealth Group, Inc.*, 2013 WL 149356, at *3 (S.D. Fla. 2013); *In re Managed Care Litig.*, 2009 WL 742678, at *3 (S.D. Fla. Jan. 14, 2009); *Polk Medical Center, Inc. v. Blue Cross and Blue Shield of Georgia, Inc.*, No. 1:17-cv-3692, 2018 WL 624882, at *3 (N.D. Ga. Jan. 30, 2018); *AvuTox, LLC v. Cigna Health and Life Insurance Company*, No. 5:17-cv-250, 2017 WL 6062257, at *3 (E.D.N.C. Dec. 7, 2017); *Simi Surgical Center, Inc. v. Connecticut General Life Insurance Company et al.*, No. 2:17-cv-02685-SVW-AS (C.D. Cal. Jan. 4, 2018) (Dkt. No. 17-2); *New Method Wellness, Inc. v. Cigna Healthcare of California, Inc.*, No. 17-00844 AG (C.D. Cal. Dec. 12, 2017) (Dkt. No. 17-3); *Forest Ambulatory Surgical Assocs., L.P. v. United Healthcare Ins. Co.*, No. 10–cv–04911–EJD, 2011 WL 2748724, at *5 (N.D. Cal. July 13, 2011); *Almont Ambulatory Surgery Ctr., LLC v. United Health Grp., Inc*., 99 F. Supp. 3d 1110, 1155 (C.D. Cal. 2015)).

In *Sanctuary Surgical*, Judge Hurley dismissed a mass action for benefits relating to 996 member claims. 2013 WL 149356, at *3. The plaintiffs cited "covered health services" language from six summary plan descriptions and two certificates of coverage. But the plaintiffs did not allege whether the 996 claims corresponded to the exemplar plans or other plans not cited or described in the complaint. Nor did they attach full plan documents or cite any of the "exclusionary" plan language. *Id.* at *5. Because they failed to allege "a precise description of the relevant coverage and exclusionary language of all plans" and show how the services were covered under that language, they failed to state a viable claim for relief. *Id*. at *6.

Here, Plaintiffs fail to identify the alleged covered services rendered or the specific plan provisions that purportedly confer the benefits Plaintiffs seek for those services. Indeed, the deficiencies in this FAC are more egregious than in *Sanctuary Surgical*. For example, Plaintiffs' claim for benefits rests on their "belief" that Cigna is "required under the terms of its healthcare contracts to pay benefits promptly" for Plaintiffs' services. (FAC ¶ 23.) But Plaintiffs fail to identify any specific language from any of the specific benefit plans at issue that would require Cigna to pay Plaintiffs any additional benefits beyond what Plaintiffs have already received. Plaintiffs' speculation that unidentified plans require Cigna to pay an unidentified amount of additional benefits on unidentified claims falls short of *Iqbal* and *Twombly*'s plausibility threshold.

The Court previously held that Count I must be dismissed for failure to "identify a specific plan term that confers any of the benefits that Defendants denied." (Order at 8.) The FAC fails to cure this deficiency. The only additional allegation in the FAC in this regard is a conclusory assertion made "on information and belief" that "Cigna's plans provide that Cigna will reimburse medically necessary, Covered Services rendered by Plaintiffs at specified levels." (FAC ¶ 156.) But Plaintiffs' conjecture on this point is inadequate. Under well-settled authority, Plaintiffs must allege the actual benefit plan terms. Plaintiffs' failure to do so mandates dismissal of Count I with prejudice.

### 3. *Plaintiffs Do Not Plausibly Allege That Cigna Is the Proper Defendant*

Plaintiffs also fail to allege sufficient facts specifying that Cigna was acting as the "plan administrator" with respect to any of the unspecified plans at issue. "Section 1132(a)(1)(B) confers the right to sue the plan administrator for recovery of benefits." *Preite v. Charles of the Ritz Grp., Ltd. Pension Plan*, 471 F. Supp. 2d 1271, 1281 (M.D. Fla. 2006) (citing *Hamilton v. Allen-Bradley Co.*, 244 F.3d 819, 824 (11th Cir. 2001)). The Eleventh Circuit is clear that "the

proper party defendant in an action concerning ERISA benefits is the party that controls administration of the plan." *Garren v. John Hancock Mutual Life Ins. Co.*, 114 F.3d 186, 187 (11th Cir. 1997).

Here, Plaintiffs allege that they bring "this action pursuant to healthcare plans directly insured and/or administered by Cigna." (FAC ¶ 21.) But Plaintiffs also allege that a "patient's ERISA health plan is interpreted by the plan administrator, which is the employer and not by a third-party administrator such as Cigna, unless such authority has been delegated or assigned to Cigna by the Plan Sponsor." (*Id.* ¶ 25.) In their Complaint, Plaintiffs admitted that "in some of the Plans at issue herein, there is no 'Discretionary Authority' provision, which means that Cigna cannot lawfully interpret the provisions of the Plans." (Compl. ¶ 24.) For this reason, the Court found that Plaintiffs' failed to "allege that Defendants control the administration of the Plans at issue in this case." (Order at 9.)

In the FAC, Plaintiffs reasserted these allegations but substituted the original language "there is no 'Discretionary Authority' provision" with "there may be no 'Discretionary Authority' provision." (FAC ¶ 26.) This change, however, does not satisfy Plaintiffs' obligation to allege that Cigna controls the administration of the plans at issue. It simply leaves open that possibility that Cigna may control the administration of the plans at issue, which fails to satisfy Plaintiffs' burden under *Iqbal* and *Twombly*. For this additional reason, Count I is dismissed with prejudice.

   d. <u>Plaintiffs Fail to State A Claim Under ERISA § 502(a)(3) (Count II)</u>

Count II is asserted on behalf of Plaintiffs Ambrosia Singer Island and Ambrosia South only. (FAC at p. 35.) Ambrosia Singer Island and Ambrosia South claim that Cigna "retaliate[ed]" against them after Ambrosia PSL "began fighting against the actions taken by Cigna." (*Id.* ¶¶ 198-99.) Cigna's alleged "retaliation" consisted of requests for patient medical records. (*Id.*) Ambrosia Singer Island and Ambrosia South allege that Cigna's medical records

requests violated Cigna's duty to maintain reasonable claims procedures pursuant to 29 C.F.R. § 2560.503-1(f)(2) — one of ERISA § 503's implementing regulations. (*Id.* ¶ 199.) They seek an injunction under ERISA § 502(a)(3) "requiring Cigna to comply with its duties and obligations under ERISA." (*Id.* ¶¶ 200-01.)

As an initial matter, neither ERISA § 503 nor its implementing regulation, 29 C.F.R. § 2560.503-1, provides for a private right of action for any substantive remedy. *See Medicomp, Inc. v. UnitedHealthcare Insurance Company*, No. 6:12-cv-100-Orl, 2012 WL 12899022, at *3 (M.D. Fla. Nov. 16, 2012) ("ERISA does not provide a private cause of action for damages due to the plan administrator's failure to satisfy § [503]."); *Rahul Shah, M.D. v. Horizon Blue Cross Blue Shield*, No. 15-8590 (RMB/KMW), 2016 WL 4499551, at *12 (D.N.J. Aug. 25, 2016) (dismissing claim for violation of 29 C.F.R. § 2560.503-1 because "29 C.F.R. § 2560.503-1 does not give rise to a private right of action"). Nor can Ambrosia Singer Island and Ambrosia South assert a claim under § 502(a)(3) for a violation of § 503 or 29 C.F.R. § 2560.503-1, as they attempt to do here. *See Medicomp*, 2012 WL 12899022, at *3 (dismissing plaintiff's claims under § 502(a) for alleged claims procedure violation and finding that § 502(a) precludes civil enforcement of § 503). Section 502(a)(3) does not provide Ambrosia Singer Island and Ambrosia South with a mechanism to pursue the substantive relief they seek. For this reason, Count II is dismissed with prejudice.

More fundamentally, however, even if ERISA § 502(a)(3) did provide an avenue for the relief Ambrosia Singer Island and Ambrosia South seek, their allegations do not amount to a violation of the claims procedure regulations. There are no allegations that Cigna has improperly denied or processed any of Ambrosia Singer Island's or Ambrosia South's claims. Plaintiffs allege only that Cigna has requested patient records from them. (FAC ¶ 198.) But Plaintiffs fail to adequately allege how Cigna's alleged medical records requests relate to ERISA's claims

processing regulations. For this additional reason, Count II is dismissed with prejudice.

      e.  <u>Plaintiffs Fail To State A Claim For Breach of Implied-in-Fact Contract (Count III)</u>

Under Florida law, a valid contract arises when the parties' assent is manifested through written or spoken words, or "inferred in whole or in part from the parties' conduct." *Commerce P'ship v. Equity Contracting Co.,* 695 So. 2d 383, 385 (Fla. App. 4 Dist. 1997). "A contract based on the parties' words is characterized as express, whereas, a contract based on the parties' conduct is said to be implied in fact." *Baron v. Osman*, 39 So. 3d 449, 451 (Fla. App. 5 Dist. 2010).

Here, Plaintiffs' implied-in-fact contract claim is based on alleged pre-service communications during which Cigna allegedly verified eligibility and coverage for the services Plaintiffs provided. (FAC ¶¶ 205-208.) Plaintiffs allege that through certain unidentified "words and conduct," Cigna agreed to pay Plaintiffs' "usual and customary charges" for the services rendered. (*Id.* ¶ 208.) The FAC also alleges that Cigna breached this alleged "promise" by "failing to reimburse Plaintiffs based on their usual and customary charges" or "failing to reimburse Plaintiffs at all." (*Id.* ¶ 218.) These allegations are insufficient for multiple reasons.

First, as with Plaintiffs' ERISA claims, Plaintiffs fail to identify the claims at issue in Count III. Plaintiffs contend that this claim is "asserted as to non-ERISA plans only," but fail to identify any claims governed by non-ERISA plans. (FAC ¶ 203.) Plaintiffs fail to identify the patients, services, dates of service, amounts billed, or amounts allegedly owed for any claims associated with this Count. Without these details, Plaintiffs' claim is inadequately pled. *See Kindred Hosp. East L.L.C. v. BCBS of Fla., Inc.*, No. 3:05-cv-995-J-32TEM, 2007 WL 601749, at *4 (M.D. Fla. Feb. 16, 2007) ("To comply with the notice requirements of Rules 8 and 10, plaintiff shall separate by count each individual claim, setting forth the patient (identified by initials); the specific insurance plan under which plaintiff is proceeding and whether it is an

ERISA-governed plan or not; the dates of treatment at plaintiff's facility; the amount of alleged incurred charges; the amount of charges allegedly remaining outstanding; and the amount of benefits sought on behalf of that patient.").

But even if Plaintiffs had included this information, Plaintiffs fail to allege any "conduct" that might give rise to an implied contract. Plaintiffs' claim rests on Cigna's alleged oral "verifications" of coverage. Plaintiffs refer generally to Cigna's "conduct during the verification process," but never specify what actions Cigna allegedly took which might support a contract claim. (FAC ¶ 206.) Without any alleged conduct, there can be no implied-in-fact contract. *See Baron*, 39 So. 3d at 451.

Furthermore, Cigna's alleged oral verification of coverage is insufficient to form the basis of any agreement to pay—whether implied or express. Courts across the country agree that an insurer's verification of coverage is not a promise to pay a certain amount. *See Vencor Hosps. S., Inc. v. Blue Cross & Blue Shield of R.I.*, 86 F. Supp. 2d 1155, 1165 (S.D. Fla. 2000) (noting that insurer's verification of coverage is merely a representation that the insured was "covered for the *type* of treatment" proposed by the medical provider, not promise to pay a certain amount for services), *aff'd*, 284 F.3d 1174 (11th Cir. 2002); *Peacock Med. Lab, LLC v. UnitedHealth Group, Inc.*, No. 14-81271-CV, 2015 WL 5118122, at *5 (S.D. Fla. Sept. 1, 2015) ("[A]llegations here of an indefinite 'confirmation of coverage' are insufficient to allege the 'definite' promise . . ."); *Cedars Sinai Medical Center v. Mid–West Nat. Life Ins. Co.,* 118 F. Supp. 2d 1002, 1008 (C.D. Cal. 2000) ("[W]ithin the medical insurance industry, an insurer's verification is not the same as a promise to pay"); *Tenet Healthsystem Desert, Inc. v. Fortis Ins. Co., Inc.,* 520 F. Supp. 2d 1184, 1194 (C.D. Cal. 2007) (coverage verification "cannot be construed as a binding contractual agreement"); *DAC Surgical Partners P.A. v. United Healthcare Servs., Inc.,* No. 4:11 C 1355, 2016 WL 7157522, at *4 (S.D. Tex. Dec. 7, 2016) ("[E]ven assuming that it was [the provider's]

practice to make verification calls, the calls were actually made, and the insurance was verified, that verification was not the same as a promise of payment."). Plaintiffs' attempt to construe Cigna's alleged oral verification as a contractual agreement to pay Plaintiffs' "usual and customary charges" has been conclusively rejected by courts nationwide. For these reasons, Count III is dismissed with prejudice.

    f.   <u>Plaintiffs Fail To State A Claim For Breach of Implied-in-Law Contract (Count IV)</u>

Plaintiffs' attempt to plead an implied-in-law contract claim under a theory of unjust enrichment is also deficient. To state a claim for unjust enrichment, plaintiff must allege that "(1) plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the conferred benefit; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff." *Extraordinary Title Services, LLC v. Fla. Power & Light Co.*, 1 So. 3d 400, 404 (Fla. App. 3 Dist. 2009).

Here, Plaintiffs contend that Cigna has been unjustly enriched "[b]y not paying Plaintiffs' claims for services." (FAC ¶ 229.) This theory fails because Plaintiffs do not allege a benefit they conferred upon Cigna. By providing treatment to Cigna insureds, Plaintiffs benefitted their *patients*, not Cigna. *See Hialeah Physicians Care, LLC v. Connecticut General Life Ins.*, 2013 WL 3810617, at *4 (S.D. Fla. July 22, 2013) ("HPC can hardly be said to have conferred any benefit, even an attenuated one, upon the Plan's insurer by providing Plan beneficiaries with health care services."); *Adventist Health System/Sunbelt Inc. v. Medical Sav. Ins. Co.*, 2004 WL 6225293, at *6 (M.D. Fla. Mar. 5, 2004) ("[A] third-party providing services to an insured confers nothing on the insurer except, a ripe claim for reimbursement, which is hardly a benefit."). Because Plaintiffs have failed to allege this element, their claim for unjust enrichment fails and Count IV is dismissed with prejudice.

g. Plaintiffs Fail To State A Claim For Civil Penalties (Count V)

In Count V, Plaintiffs allege that Cigna violated 29 U.S.C. § 1132(c)(1)(B) by failing to provide them with certain plan documents. However, as Plaintiffs readily admit, § 1132(c)(1)(B) provides only that participants and beneficiaries are entitled to request documents from a plan administrator. (FAC ¶ 235.) A "plan administrator is under no obligation to disclose plan documents to third parties without written authorization from participant or beneficiary." *Sanctuary Surgical*, 2013 WL 149356 at \*11. Indeed, "it would be unfair to penalize an administrator for failing to disclose plan documents to a third party who has not informed the administrator of its status as an assignee and putative beneficiary." *Barix Clinics of Ohio, Inc. v. Longaberger Fam. of Cos. Grp. Med. Plan*, 459 F. Supp. 2d 617, 625 (S.D. Ohio 2005) (dismissing claim for failure to allege that plaintiff submitted to defendants any written authorization from its patients for the disclosure of plan documents); *see also Sanctuary Surgical*, 2013 WL 149356, at \*6 n.4 ("plaintiffs do not allege that they submitted . . . any written request or authorization from the patients allowing disclosure of plan documents directly to them . . . .Without such a predicate, they fail to allege a violation of 29 U.S.C. § 1024(b). . . .").

Here, Plaintiffs have not alleged that they provided Cigna with notice of any written authorization and assignment of the right to request plan documentation. Plaintiffs allege only that they, as a third-party provider, requested documents from Cigna. (FAC ¶ 236.) Plaintiffs made this critical omission in their Complaint and the Court dismissed Plaintiffs' claim for this very reason. (Order at 13-14.) Plaintiffs have now re-asserted this claim but have failed to add any substantive allegations to this Count. (FAC ¶¶ 234-40.)[3] Because Plaintiffs have still failed

---

[3] Elsewhere in the FAC, Plaintiffs allege that Cigna has "been made aware of the existence of the AOBs and POAs since the time of initial Utilization Review." (FAC ¶ 33.) This allegation is insufficient. Plaintiffs are obligated to notify Cigna of their right to receive plan documents. *See*

to allege that they notified Cigna of their alleged right to receive plan documents, Plaintiffs fail to state a plausible claim under 29 U.S.C. § 1132(c)(1)(b).

Plaintiffs also seek penalties against Cigna for failure to provide "associated documents," such as documents showing the basis for adverse benefits determinations and the methodology Cigna used. (FAC ¶¶ 236, 238.) However, "the plain text of section 1024 refers only to the formal legal documents governing a plan, and does not refer to claims-related documents." *Castro v. Hartford Life & Acc. Ins. Co.*, No. 5:11-CV-446-OC-34TBS, 2011 WL 4889174, at *6 (M.D. Fla. Oct. 14, 2011) ("[T]he Court declines to rewrite Section 1132(c) to authorize statutory penalties against an administrator for failure to provide documents other than those identified in the statute itself.") (citations omitted). In dismissing this Count, this Court specifically directed Plaintiffs to "clearly show what part of ERISA entitles them to the requested documents." (Order at 14 n.4.) Ignoring this clear instruction, Plaintiffs request these same "associated documents" without citing any part of ERISA that supposedly entitles Plaintiffs to receive them. Accordingly, Plaintiffs' request for civil penalties fails, and Count V is dismissed with prejudice.

### h. Dismissal With Prejudice

Finally, the Court concludes that the FAC is dismissed with prejudice. The Court's dismissal is with prejudice for three reasons. First, the deadline for amended pleadings in this case was May 1, 2018. Second, during the course of nine months of litigation in this case Plaintiffs have had the opportunity to amend their pleadings. Third, in its Order, this Court provided Plaintiffs with a clear directive on how to cure their pleading deficiencies. Plaintiffs' failure to follow those instructions and cure the pleading deficiencies warrant the Court's

---

*Barix*, 459 F. Supp. 2d at 625. There is no mention of the "AOBs" or Plaintiffs' purported right to receive plan documents in Plaintiffs' request to Cigna (*see* Ex. 6 to FAC) nor is there any allegation that Plaintiffs provided such notification in connection with their request.

dismissal of the FAC with prejudice, and without further leave to amend. *See Barber v. FBI*, 2016 WL 4041048, at *1 (M.D. Fla. July 27, 2016) (dismissing complaint with prejudice where "Plaintiff has made no meaningful attempt to follow the Court's directives with respect to his pleading deficiencies."); *Farnsworth v. HCA, Inc.*, 2015 WL 5234640, at *8 (M.D. Fla. Sept. 8, 2015) (dismissing complaint with prejudice where plaintiff failed to follow "the Court's clear guidance" in amending complaint).

## IV. CONCLUSION

Accordingly, **IT IS HEREBY ORDERED**, that Defendants' Motion to Dismiss the First Amended Complaint is **GRANTED**. The First Amended Complaint is hereby dismissed with prejudice.

**DONE AND ORDERED** in Chambers, West Palm Beach, Florida, this 20th day of November, 2018.

_____
ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE